# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

SUNIL JOSEPH,

        Plaintiff,

      v.

THE COUNTY OF NASSAU,

        Defendant.

**Civ No. 20-1907**

**COMPLAINT**

---

Plaintiff, SUNIL JOSEPH, by and through his undersigned counsel, EISENBERG & BAUM, LLP, for his Complaint against Defendant, THE COUNTY OF NASSAU, hereby alleges as follows:

## **INTRODUCTION**

1. Plaintiff, Sunil Joseph, is a deaf individual whose primary and preferred means of communication is American Sign Language ("ASL"). In two separate incidents, Mr. Joseph was arrested and detained by the Nassau County Police Department ("NCPD"). In both incidents, the NCPD held Mr. Joseph in jail for hours without attempting to obtain a qualified ASL interpreter. Defendant's failure to provide effective communication in its interactions with Mr. Joseph prevented him from effectively communicating and participating in the incidents he was involved in. These traumatic experiences caused Mr. Joseph humiliation, frustration, embarrassment and fear.

2. Due to physical, environmental, and pedagogical factors, many deaf individuals, including Mr. Joseph, have difficulty acquiring English. Indeed, the median reading level of deaf high school graduates is fourth grade. This is because English is generally a second language (after

ASL or another form of sign language) for individuals who are born deaf or become deaf before acquiring language. In addition, many deaf people acquire English as their second language later in life, and well past the critical developmental period of language acquisition. Despite this, Defendant failed to provide and to properly accommodate Plaintiff's disability through qualified ASL interpreters to communicate regarding complex and emotionally fraught matters.

3. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, does not provide effective communication for most deaf and hard of hearing individuals. In fact, the upper limits of estimates for lip-reading accuracy, in an ideal one-on-one situation, have been as low as 10% to 30% of correct words. This is because only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language or the speaker's vocabulary, for the reasons set forth above. Despite this, Defendant failed to provide and to properly accommodate Plaintiff's disability through qualified ASL interpreters to communicate regarding complex and emotionally fraught matters.

4. Defendant's failure to accommodate Mr. Joseph's disability represents a continuing violation that has persisted for many years. This is evidenced by a recent lawsuit in which Defendant was sued by a deaf individual due to the NCPD's failure to provide a qualified sign language interpreter. *McCallister v The Village of Rockville Centre et al,* No. 1:19-cv-05559-JPO (E.D.N.Y. filed July 5, 2017). Defendant has continued to ignore the rights of deaf individuals, leading to additional complaints and lawsuits.

5. Plaintiff brings this lawsuit to compel Defendant to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full

and equal enjoyment, and a meaningful opportunity to participate in and benefit from its services. Plaintiff seeks declaratory and equitable relief, monetary damages, and attorneys' fees to redress. Defendant's unlawful discrimination on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and its implementing regulation, 28 C.F.R. Part 35; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791; and other state and common law causes of action.

## THE PARTIES

6. Plaintiff, SUNIL JOSEPH (hereinafter "Plaintiff or "Mr. Joseph"), is an individual residing in Nassau County, New York. SUNIL JOSEPH is a profoundly deaf individual who primarily communicates in American Sign Language. He is substantially limited in the major life activities of hearing and speaking, and is a qualified person with a disability within the meaning of the ADA and the Rehabilitation Act.

7. Defendant, THE COUNTY OF NASSAU, is a duly incorporated municipality of the State of New York, whose seat of governance was and still is located at 1550 Franklin Avenue in Garden City, Nassau County, New York.

8. The Nassau County Police Department ("NCPD") is a municipal police force and a governmental agency of The County of Nassau, and is therefore a department, agency, special purpose district, or other instrumentality of a local government within the meaning of 42 U.S.C. § 12131(1)(B).

9. Defendant, The County of Nassau, is a public entity and recipient of federal financial assistance, thus making each entity identified above subject to the requirements of both the ADA and the Rehabilitation Act.

## JURISDICTION & VENUE

10. This Court has subject matter jurisdiction for the federal-law claims under 28

U.S.C. §§ 1331 and 1343 for claims arising under Title II of the ADA, 42 U.S.C §§ 12131, et seq. and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because all parties reside within this District and the events that give rise to the claims occurred in this District.

**STATEMENT OF FACTS**

12. Plaintiff is a profoundly deaf individual who communicates primarily in American Sign Language ("ASL").

13. On April 12, 2018, Plaintiff saw on the news that Plaintiff was wanted in connection to an attempted robbery occurring at the Marriot Long-Island Hotel located at 101 James Doolittle Blvd. Uniondale, New York 11553.

14. At approximately 8:30 PM, Plaintiff surrendered at the Nassau County Police Precinct located at 214 Hillside Avenue, Williston Park, NY.

15. Upon his arrival at the precinct, Plaintiff gestured that he was deaf and wrote notes to members of NCPD to request a sign language interpreter.

16. Facing serious felony charges and eager to explain his innocence, Plaintiff needed an interpreter to ensure effective communication with members of NCPD.

17. At approximately 8:45 PM, Detective Jeffery Rios began to interrogate Plaintiff without an interpreter.

18. During the interrogation, Detective Rios wrote on a note, "Please explain to me what happened at the Marriott this morning at about 3:50 a.m." To which Plaintiff wrote back, "Thur relay 3-way ASL."

19. Despite Plaintiff's request for an interpreter and NCPD's knowledge of Plaintiff's disability, Detective Rios continued to interrogate Plaintiff without the aid of a qualified interpreter.

20. Plaintiff was subsequently arrested, fingerprinted, and detained without the aid of an interpreter.

21. Plaintiff was detained for approximately 24-hours before being released.

22. During his confinement in jail, the NCPD did not provide an interpreter or any other form of accommodation to ensure effective communication with Plaintiff.

23. Without the aid of an interpreter, Plaintiff was unable to effectively communicate with members of NCPD and suffered the protracted humiliation of not understanding the basis of his arrest and detention.

24. On March 23, 2019, at approximately 10 PM, on the corner of Hilton Ave. and Fulton Ave. in Hempstead, NY, Plaintiff was apprehended because members of the NCPD believed that Plaintiff was in possession of a controlled substance.

25. Plaintiff gestured to NCPD officers that Plaintiff was deaf.

26. Plaintiff was arrested by Police Officer Christopher J. Digregorio and transported back to the Nassau County Police Precinct located at 214 Hillside Avenue, Williston Park, NY.

27. Upon Plaintiff's arrival at the precinct, no interpreter was provided to Plaintiff to ensure effective communication.

28. Plaintiff was admitted and booked without the aid of a sign language interpreter.

29. Plaintiff wrote notes to members of NCPD to request a sign language interpreter so that Plaintiff could understand the pending charges against Plaintiff and why he was being arrested.

30. Despite these requests, no sign language interpreter was ever provided to Plaintiff.

31. Plaintiff was detained for over 24-hours before being released.

32. During his confinement in jail, the NCPD did not provide an interpreter or any other form of accommodation to ensure effective communication.

33. Without the aid of an interpreter, Plaintiff was unable to effectively communicate with members of NCPD and suffered the protracted humiliation of not understanding the basis of his arrest and detention.

34. In both referenced incidents, members of the NCPD did not, at any point, provide Plaintiff with adequate auxiliary aids and services to enable him to effectively communicate, despite knowing that he was deaf and despite Plaintiff's requests for an ASL interpreter. The confusion caused by the NCPD's failure to accommodate Plaintiff's disability left him isolated and uninformed, causing him anxiety, fear, and frustration.

35. In both referenced incidents, effective communication could not have taken place without the aid of a qualified ASL interpreter.

36. Defendant knew or should have known of its obligations under the ADA and Section 504 to provide accommodations to individuals with disabilities, including individuals who are deaf or hard of hearing, and to develop policies to promote compliance with theses statutes.

37. As a result of Defendant's failure to ensure effective communication with Plaintiff, Plaintiff received services that were objectively substandard and that were inferior to those provided to persons who are hearing, and he was subjected to discriminatory treatment because of his disability.

38. Defendant demonstrated, through its interactions with Plaintiff, that NCPD officers are not properly trained on how to interact with deaf individuals, resulting in significant delays and communication breakdowns.

39. Defendant's wrongful and intentional discrimination against Plaintiff on the basis of disability is reflected by the Defendant's failure to train employees and agents and promulgate policies of non-discrimination against deaf individuals.

40. Plaintiff is a resident of Nassau County and expects to have future encounters with the NCPD.

41. Plaintiff is deterred from seeking the aid or protection of the NCPD due to the discrimination he expects to face if he does so.

42. Defendant intentionally discriminated against Plaintiff and acted with deliberate indifference to his communication needs, causing him to endure humiliation, shame, fear, anxiety, and emotional distress.

### **CLAIM 1: VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT**

43. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

44. At all times relevant to this action, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, has been in full force and effect and has applied to Defendant's conduct.

45. At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to the Defendant's conduct.

46. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of "hearing" and "speaking" and thus has a disability within the meaning of the ADA. 42 U.S.C. § 12102(2).

47. Defendant, through the NCPD, is a public entity as defined under Title II of the ADA, 42 U.S.C. § 12131(1).

48. The County of Nassau is vicariously liable for the actions of its employees and agents under a theory of *respondeat superior*, and is directly liable for its failure to train employees and agents and its failure to implement or modify policies to ensure compliance with the ADA.

49. Title II of the ADA provides that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

50. Federal Regulations implementing Title II of the ADA state that a public entity may not "(i) [d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) [a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or] (iii) [p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1)(i)–(iii).

51. Federal Regulations implementing Title II of the ADA state that a public entity "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

52. Federal Regulations implementing Title II of the ADA state that "[a] public entity shall furnish appropriate auxiliary aids and services where necessary," and "[i]n order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(1)–(2).

53. Title II of the ADA states that auxiliary aids and services include, but are not limited to, "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments." 42 U.S.C. § 12103.

54. When choosing an aid or service, Title II entities are ***required*** to give primary

consideration to the choice of aid or service requested by the person who has a communication disability." DOJ Rules at 4 (emphasis in original).

55. "The state or local government must honor the person's choice, unless it can demonstrate that another equally effective means of communication is available, or that the use of the means chosen would result in a fundamental alteration or in an undue burden . . . ." DOJ Rules at 4.

56. "A critical and often overlooked component of ensuring success[ful] communication is comprehensive and ongoing staff training. Covered entities may have established good policies, but if front line staff are not aware of them or do not know how to implement them, problems can arise. Covered entities should teach staff about the ADA's requirements for communicating effectively with people who have communication disabilities." DOJ Rules at 4.

57. Defendant discriminated against Plaintiff on the basis of his disability in violation of Title II of the ADA and its implementing regulations.

58. Defendant discriminated against Plaintiff on the basis of disability by excluding him from participation in and denying her the benefits of their services, and by subjecting him to discrimination, in violation of the ADA.

59. Defendant further discriminated against Plaintiff by failing to ensure effective communication through the provision of a qualified in-person interpreter.

60. Defendant's failure to provide effective communication to Plaintiff denied him the same access to Defendant's services, benefits, activities, programs, or privileges as the access provided to hearing individuals.

61. Defendant, through the NCPD, has failed to implement policies, procedures, and

training of its police officers necessary to ensure compliance with Title II of the ADA and its implementing regulations.

62. Defendant's violation of Plaintiff's rights under the ADA caused him to suffer from discrimination, unequal treatment, and exclusion.

63. Plaintiff is therefore entitled to compensatory damages for the injuries and loss sustained as a result of Defendant's deliberate indifference as hereinbefore alleged, as well as an award of attorney's fees, costs, and disbursements, pursuant to the ADA, 42 U.S.C. § 12133.

**CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

64. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

65. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendant's conduct.

66. At all times relevant to this action, Plaintiff has had substantial impairment to the major life activities of hearing and speaking within the meaning of 45 C.F.R. § 84.3(j), and accordingly, he is individual with a disability as defined under 29 U.S.C. § 708(20)(B).

67. At all times relevant to this action, Defendant has been a program or activity receiving federal financial assistance under 29 U.S.C. § 794(b).

68. Section 504 of the Rehabilitation Act provides that no "otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

69. Defendant discriminated against Plaintiff solely on the basis of his disability by denying him meaningful access to the services, programs, and benefits Defendant offers to other individuals and by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 504 of the Rehabilitation Act.

70. Defendant further discriminated against Plaintiff by failing to ensure effective communication through the specific provision of a qualified in-person interpreter.

71. Defendant, through the NCPD, further discriminated against Plaintiff by failing to train their officers to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the Rehabilitation Act.

72. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss sustained as a result of Defendant's discriminatory conduct as hereinbefore alleged, as well as an award of attorney's fees, costs, and disbursements, pursuant to the Rehabilitation Act, 29 U.S.C. § 794.

**CLAIM 3: VIOLATIONS OF THE NEW YORK HUMAN RIGHTS LAW**

73. At all times relevant to this action, the New York Human Rights Law has been in full force and effect and has applied to Defendant's conduct. N.Y. Exec. Law § 290(3) (discussing public services).

74. At all times relevant to this action, Plaintiff has had substantial impairments to the major life activities of hearing and speaking and thus is a qualified individual with a disability within the meaning of N.Y. Exec. Law § 292(21).

75. Under the New York Human Rights Law, covered entities are prohibited from discriminating against an individual based on his or her disability.

76. Defendant further discriminated against him by failing to ensure effective communication through an in-person interpreter.

77. Plaintiff is entitled to compensatory damages for the injuries and loss sustained as a result of Defendant's discriminatory conduct under N.Y. Exec. Law § 297(9).

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief against Defendant:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the New York State Human Rights Law

B. Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendant's facilities, services or programs;

C. Order The County of Nassau (NCPD)

   i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication;

   ii. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual is arrested, Defendant will evaluate the individual's need for an accommodation;

   iii. to develop, implement, promulgate, and comply with a policy requiring that Defendant will assess and then provide the appropriate accommodations to deaf and hard of hearing individuals during an investigation, emergency response, and/or arrest;

   iv. to develop, implement, promulgate, and comply with a policy requiring

Defendant to provide the proper interpretive services, TDD, videophones, and other assistive devices that are required for deaf and hard of hearing individuals to fully participate in and benefit from the programs and services offered by these public entities.

v. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an on-site interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendant;

vi. to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendant will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

vii. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances;

viii. to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

ix. to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, and Section 504 of the Rehabilitation Act;

D. Award to Plaintiff:

i. Compensatory damages under all causes of action;

ii. Reasonable costs and attorneys' fees pursuant to the ADA, Section 504 of the Rehabilitation Act;

iii. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

iv. any and all other relief that this Court finds necessary and appropriate.

Respectfully submitted,

EISENBERG & BAUM, LLP

By: <u>s/ Andrew Rozynski, Esq.</u>

Andrew Rozynski, Esq.
24 Union Square East, Fourth Floor
New York, NY 10003
Phone: (212) 353-8700
Fax: (212) 353-1708
arozynski@eandblaw.com

*Attorneys for Plaintiff*